IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Carl Prostell, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:17cv1328 (LO/TCB) |
| | ) | |
| David Zook, | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION

Carl Prostell, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions in the Circuit Court for the City of Newport News. Respondent filed a Motion to Dismiss and Rule 5 Answer, along with a supporting brief and exhibits. Dkt. Nos. 15-17. Petitioner was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. Dkt. No. 18. Petitioner filed a response. Dkt. No. 21. The matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed, with prejudice.

### I. Background

The record reflects the following. Petitioner is detained pursuant to a final judgment of the Circuit Court for the City of Newport News, entered April 16, 2014. Commonwealth v. Prostell, Case Nos. 00347-13, 00406-13. Petitioner was convicted by a judge of one count of aggravated malicious wounding, in violation of Virginia Code § 18.2-51.2(A), and one count of violation of a protective order resulting in serious bodily injury, in violation of Virginia Code §

18.2-60.4. Id. Petitioner was sentenced to fifty-five (55) years imprisonment, with twenty-five (25) years suspended. Id.

Petitioner pursued a direct appeal to the Court of Appeals of Virginia, which was denied on January 29, 2015, and again by a three judge panel on May 14, 2015. Record No. 0923-14-1. On direct appeal, the Court of Appeals of Virginia stated the facts as follows.[1]

> [T]he evidence proved that on July 25, 2012, the victim, his adult daughter, and his daughter's boyfriend were fishing at a fishing pier for about "twenty minutes" before [petitioner], the victim's son, arrived unexpectedly and said that he wanted to speak with the victim. Trial Tr. at 19. The victim and [petitioner] had an "up and down" relationship, id. at 83, and only five months earlier, the victim had obtained a protective order against [petitioner], citing "family abuse" as the basis for the order, Commonwealth's Ex. 3. When [petitioner] arrived at the fishing pier, he and the victim stepped off to the side, "not even 25 feet away" from where the victim's daughter was standing but out of her line of sight. Trial Tr. at 17. The victim's daughter then heard the two men "having words" over a roughly ten-minute period. Id. at 20. [Petitioner] "got loud but the victim didn't get loud." Id. at 21.
>
> The victim's daughter then overheard the victim say, "Hit me," and [petitioner] reply, "I'm not going to hit you." Id. at 23. "After that exchange," id. at 24, she heard the victim call out for another fisherman at the pier "to call the police," id. at 26. Then she heard a "boom or a hit." Id. at 17. When she went over to where the victim and [petitioner] had been arguing, she found the victim "on the ground" and [petitioner] "walking away" from the victim's unconscious body. Id. at 18. The victim appeared to be "asleep," id., and he was "bleeding from the right ear," Commonwealth's Ex. 1 ("Admission History and Physical"). The victim's daughter "had never seen" [petitioner] "in a rage like he was." Trial Tr. at 22. His face was "red," and as he walked away, she "could see the fire." Id.
>
> The victim did not recall the altercation with [petitioner]. He merely remembered that he "was fishing and woke up with IV tubes in him" in an intensive care unit. Id. at 87. Earlier that day, the victim, who had previously co-signed with [petitioner] for "a motorized scooter," had come to the residence of [petitioner's] fiancée to repossess the scooter. Id. at 63. [Petitioner] had stopped making payments on the scooter, and the victim's wages were consequently "being garnished." Id. at 86. [Petitioner] had emerged from the residence during the

---

[1] Because the Supreme Court of Virginia refused further review of this order without explanation, the reasoning of the Court of Appeals is imputed to it. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

2

repossession, and the victim and he "had a few words about the victim taking the scooter." Id.

[Petitioner] testified on his own behalf at trial and stated that he "wasn't upset" about the victim's repossession of the scooter. Id. at 94. He claimed that he had only "decided to go fishing" at the pier because he "had nothing else to do." Id. at 92-93. Once he saw the victim and they began to talk, [petitioner] stated that their conversation turned into "a really heated argument" and that the victim then "swung at [petitioner] and he swung back." Id. at 95. He contended that he hit the victim only once "on the temple." Id.; see also 98. The victim then fell, and [petitioner] "backed up and went and got his fishing gear and got in the truck and left." Id. at 96. [Petitioner] also admitted that he had been previously convicted of a felony.

At trial, the doctor who had treated the victim's brain injuries was admitted without objection as an expert neurologist. Upon the expert's initial review of the victim, he found the victim to be "not right neurologically" and "in a very obvious altered mental state." Id. at 32. The victim sustained "bruising involving an extensive area along the cortical surface, the surface of the brain along the right hemisphere of his brain." Id. at 31. Additionally, the victim suffered "extensive traumatic subarachnoid hemorrhage and subdural hematoma" and fractures of his jaw bone and right cheekbone. Id. at 30. He further sustained loss of "a significant portion" of brain matter in his cortex, id. at 36, "the most advanced and complex part of the brain which is associated with judgment, cognition and consciousness," id. at 43. The brain matter will "never regenerate." Id. at 37. The expert testified that the injuries were "evidence of considerable injury consistent with trauma." Id. at 31. As a result of the incident, the victim has suffered "permanent" loss of brain matter, "continued problems with balance," and "ongoing seizures." Id. at 37. He also must walk with the assistance of a cane and requires "twenty-four-hour care." Id. at 73.

In announcing its verdict, the trial court initially remarked that "it's highly unlikely that one blow caused" the victim's extensive brain injuries. Id. at 103. The court later stated that "the extent of the injuries undermines [petitioner's] argument that you can't presume aggravated malicious wounding from one blow." Id. at 104-05. In reaching its verdict, the trial court also noted the dispute that [petitioner] had just had with the victim over the scooter, the victim's "protective order against [petitioner]," and [petitioner's] abandonment of the victim and failure to seek help after he had inflicted the injuries. Id. at 106-07. The trial court thus found [petitioner] guilty of aggravated malicious wounding of the victim.

Id. (alterations omitted). In his direct appeal, petitioner claimed that "the evidence was insufficient to convict him of aggravated malicious wounding because there was 'testimony to

3

only one punch by [petitioner]' and that the trial court abused its discretion in finding more than one punch by [petitioner.]" Id. (alterations omitted). The Supreme Court of Virginia refused the petition for appeal on February 17, 2016, and denied the petition for rehearing on February 17, 2016. Record No. 150940.

After pursuing his direct appeal, petitioner timely filed a petition for a writ of habeas corpus in the Circuit Court for the City of Newport News. Prostell v. Commonwealth, Case No. CL16H01524. Petitioner asserted the following claims in his state habeas corpus petition.

> I. Ineffective assistance of counsel for not presenting mitigating evidence from [petitioner's] childhood.
>
> II. Ineffective Assistance of counsel for not requesting a different judge after [petitioner] withdrew his guilty plea.
>
> III. The evidence was insufficient to prove every element of malicious wounding.
>
> IV. The trial court abused its discretion in finding that the petitioner struck the victim more than one time.
>
> V. The trial court abused its discretion when it allowed petitioner to go forward in front of the court after withdrawing his plea.

Id. The circuit court denied and dismissed petitioner's state habeas petition on February 1, 2017. Id. Petitioner appealed to the Supreme Court of Virginia, however, the appeal was dismissed as untimely filed on October 6, 2017. Record No. 170580. Petitioner's petition to set aside the judgment and grant a rehearing was denied on November 20, 2017. Id.

On October 12, 2017, petitioner filed the instant federal petition, wherein he challenges his convictions on the following grounds.

> 1. Petitioner's counsel at sentencing was ineffective because he failed to obtain records that could have been used as mitigating evidence at sentencing.

4

2. The evidence was insufficient to support a conviction of aggravated malicious wounding rather than the lesser included offense of malicious wounding or assault and battery on a family member.

3. Petitioner's Due Process and Equal Protection rights were violated on direct appeal because his appellate counsel falsely presupposed that the only evidence against petitioner was testimonial and counsel's argument was incompetent.

4. Petitioner's trial counsel and counsel at sentencing were ineffective because they failed to investigate and present mitigating evidence.

5. Petitioner was prejudiced by counsels' cumulative errors.

6. Petitioner's Eighth Amendment rights were violated because his punishment was excessive.

See Dkt. Nos. 1, 11.

## II. Procedural Bar, Exhaustion, and Default

### A. Claims One and Four

Where a state court has made an express determination of procedural default, the state court's finding is entitled to a presumption of correctness, provided two foundational requirements are met. See 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. See Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259 (1989). Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. See Harris, 489 U.S. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). When these two requirements have been met, federal courts may not review the barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260.

In this case, Claims One and Four were raised in petitioner's state habeas corpus application filed in the Circuit Court for the City of Newport New; however, after the petition

5

was denied and dismissed by the trial court, petitioner failed to perfect his appeal to the Supreme Court of Virginia. Because the Supreme Court of Virginia explicitly relied on a procedural ground to deny petitioner relief and furnished an independent and adequate state ground to default Claims One and Four, those claims are barred here. Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir. 1986) ("failure to appeal claims disposed of by state habeas trial court constitutes a procedural bar to further federal review of such claims").

### B. Claims Three, Five, and Six

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

Petitioner did not raise Claims Three, Five, and Six either in his direct appeal or his state habeas petition. Therefore, they were never presented to the Supreme Court of Virginia; however, they are nonetheless treated as exhausted because petitioner is now precluded from raising them in state court. See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."). Specifically, Claims Three, Five, and Six are procedurally

6

defaulted under Virginia Code § 8.01-654(B)(2), which bars successive state habeas applications. The Fourth Circuit has "held on numerous occasions that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision." Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997). Because "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim," Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)), Claims Three, Five, and Six of the instant petition are procedurally defaulted from federal consideration. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

### C. Cause and Prejudice

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton, 845 F.2d at 1241-42. Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

In his opposition to the Motion to Dismiss petitioner does not argue cause or actual innocence as to Claims One and Four, rather, he reiterates his arguments regarding the merits of these claims. Therefore, because petitioner has failed to establish cause or actual innocence, Claims One and Four are defaulted and will be dismissed.

Also in his opposition to the Motion to Dismiss, petitioner does not argue cause or actual innocence as to Claims Three, Five and Six, rather, he reiterates his arguments regarding the merits of these claims Therefore, Claims Three, Five, and Six are deemed to be simultaneously exhausted and defaulted, and will be dismissed.

### III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts presented at the trial. 28 U.S.C. § 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. A federal court should review the state court determination with deference; a federal court cannot grant the writ simply because it concludes that the state court incorrectly applied the legal standard. Woodford v. Visciotti, 537 U.S. 19, 24 (2002). Rather, "the federal habeas scheme ... authorizes federal court intervention only when a state-court decision is objectively unreasonable." Id. at 27. A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### IV. Analysis

In Claim Two, petitioner argues that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt as to the aggravated malicious wounding charge. Jackson v. Virginia, 443 U.S. 307 (1979), provides the standard by which a federal court must review a habeas petition alleging insufficiency of the evidence. A federal court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original) (internal citations omitted). The federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539, 546–47 (1981); see Wilson v. Greene, 155 F.3d 396, 405–06 (4th Cir.

1998) (citing Wright v. West, 505 U.S. 277, 292 (1992) for the holding that a federal habeas court is prohibited from either "consider[ing] anew the jury's guilt determination or "replac[ing] the state's system of direct appellate review").

Challenges based on the sufficiency of the evidence thus face "two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam). An appellate court reviewing a challenge to the sufficiency of the evidence on direct appeal may overturn the trial court's verdict only if no rational trier of fact could have agreed with the outcome. Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). A federal habeas court may only overturn this state court decision if the decision was "objectively unreasonable;" it may not overturn the decision simply because it disagrees with the outcome. Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Petitioner argues that, based on the evidence adduced at trial, no rational fact finder could have found, beyond a reasonable doubt, that he was guilty of aggravated malicious wounding. Dkt. No. 1. In his opposition to the Motion to Dismiss, petitioner specifies that the evidence was insufficient because his testimony, which he claims was never contradicted or challenged, was that he punched the victim only once. Dkt. No. 21. However, petitioner goes on to assert, the trial court dismissed his testimony and relied on the medical evidence, which does not explain the cause of the victim's injuries, to come up with theories of what happened, thus basing the conviction on "an opinion and an unreasonable determination of facts."[2] Id.

---

[2] In addition, petitioner argues that presuming that infliction of an injury is proof of intent improperly shifted the burden of proof to petitioner. Dkt. No. 21. Because this argument does not go to the sufficiency of the evidence and was first raised in his opposition to the Motion to Dismiss, it will not be considered. Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 917 (E.D. Va. 2004) ("[I]t is ... axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks and citations omitted).

10

The Court of Appeals of Virginia denied this claim on direct appeal, stating that

> [t]o convict an accused of aggravated malicious wounding, the Commonwealth must prove that the accused "maliciously wounded any other person, or by means caused bodily injury, with the intent to main, disfigure, disable or kill" and that "the victim was thereby severely injured and caused to suffer permanent and significant physical impairment." Code § 18.2-51.2(A). Malicious intent "may, and often must, be inferred from the fact and circumstances in a particular case," Ridley v. Commonwealth, 219 Va. 834. 836, 252 S.E.2d 313, 314 (1979), "including a person's conduct and statements," Robertson v. Commonwealth, 31 Va. App. 814, 820, 525 S.E.2d 640, 643 (2000). Moreover, "malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" Tizon [v. Commonwealth], 60 Va. App. [1, 11], 723 S.E.2d [260, 265 (2012)] (quoting Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947)); see also Burkeen v. Commonwealth, 286 Va. 255, 259, 749 S.E.2d 172, 174 (2013). ...
>
> [T]he testimonial evidence did not establish that [petitioner] hit the victim only once. While [petitioner] testified on his own behalf that he landed only one punch, testimony by the victim's daughter did not purport to number the blows that [petitioner] had landed. She only stated that she heard a "boom or a hit." Trial Tr. at 17. It was left to the factfinder to decide whether what she heard was due to a single injurious blow by [petitioner], to the impact of the victim's body hitting the ground, or to some other cause altogether. Additionally, [petitioner] falsely presupposes that the only evidence against him was testimonial. Physical evidence, including medical reports and photographs of the victim depicting substantial trauma to the victim's brain, face, and jaw, was also presented to the trial court. See Commonwealth's Exs. 1-2. A trial court is not limited to testimonial evidence in its findings of fact but considers all competent evidence admitted at trial. ...
>
> Even if the evidence did establish that [petitioner] landed only one punch, that punch was sufficiently violent or brutal to supply malicious intent. Although "under ordinary circumstances an intent to maim may not be presumed from a blow with a bare fist an assault with a bare fist may be attended with such circumstances of violence and brutality that an intent to kill may be presumed." Burkeen, 286 Va. at 259, 749 S.E.2d at 175. The Commonwealth's expert testified that the victim's jaw and cheekbone were broken, that the victim suffered extensive bruising of the brain, and that the victim had sustained permanent loss of brain matter in "the most advanced and complex part of the brain which is associated with judgement, cognition and consciousness." Trial Tr. at 43. The expert concluded that the injuries were "evidence of considerable injury consistent with trauma." Id. at 31.

> Additionally, [petitioner] himself testified that he had punched the victim, who was sixty-three years old at the time, in a vulnerable area – the side of the victim's head "on the temple." Id. at 95. [Petitioner] also acknowledged that he was "about half the victim's age" and was "bigger than the victim." Id. at 98. It is well settled that "the fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts," Robertson, 31 Va. App. at 820, 525 S.E.2d at 643, and that, under the circumstances, [petitioner] "maliciously wounded" his father "with the intent to maim, disfigure, disable or kill." Code § 18.2-51.2(A). Accordingly, even if the trial court had found that [petitioner] landed only one punch, that one punch would have been legally sufficient to establish aggravated malicious wounding.

Record No. 0923-14-1 (alterations omitted). "Jackson leaves [fact finders] broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that [fact finders] draw reasonable inferences from basic facts to ultimate facts." Coleman, 566 U.S. at 655 (internal quotation marks and citation omitted). "[Jackson] also unambiguously instructs that a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. Cavazos, 565 U.S. at 7 (internal quotation marks and citation omitted)

When the appropriate deference is paid to the findings of fact made by the Virginia courts, it is readily apparent that a rational trier of fact could have found beyond a reasonable doubt that petitioner committed the crime of aggravated malicious wounding. Because the disposition of this claim by the state court on direct appeal was both factually reasonable and in accord with controlling federal principles, Jackson, 443 U.S. at 319, the same result is compelled here. Williams, 529 U.S. at 412–13.

## V. Evidentiary Hearing

In his petition, petitioner requested an evidentiary hearing. Dkt. No. 1.

In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (internal quotation marks and citations omitted). For the reasons stated above, the record precludes habeas relief, therefore, petitioner's request for an evidentiary hearing will be denied.

## VI. Conclusion

Petitioner's Claims One, Three, Four, Five, and Six are procedurally barred. As to Claim Two, nothing in the state court record indicates that the state court decision was either contrary to, or an unreasonable application of, clearly established federal law; nor did the decision involve an unreasonable determination of the facts. Accordingly, this petition will be dismissed, with prejudice, by an Order to be issued with this Memorandum Opinion.

Entered this 4th day of September 2018.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge